I appreciate the attorneys for both sides who have approached the podium. Tell us who you are and who you represent, starting with the attorney for the appellant. I'm Phil Payne from the Office of the State Appellate Defender on behalf of Mr. Reimer. State. Good morning, my name is Sebastian Soboma, Assistant State Attorney on behalf of the people. Each side has 15 minutes. We'd appreciate it if you gave your strongest points first. As I explained in the beginning, I imagine you were here, we have three other orals, or three more orals than we have four today. So while we don't normally look at our watches, we have to keep close to it. So as long as you keep it interesting, you'll be allowed to argue. Proceed, Mr. Payne. Sorry, Justice Harris. Good morning, and may it please the Court. As I said, my name is Phil Payne, and I represent Mr. Reimer, who is the appellant in this case. Mr. Reimer has raised four issues on appeal, and I welcome your questions on any of those issues at any time. But I would like to begin with the due process violation that occurred before the grand jury in this case. And if I have time, I'd like to get to the sufficiency of the evidence. And if I may, I'd like to reserve a few minutes of my time for a moment.  Thank you, Your Honor. When presenting before a grand jury, the presenting prosecutor has a duty to inform that grand jury of the law that governs the charges in question. And when the prosecutor misleads or deceives the grand jury about those charges or about the law that governs them, due process is violated because the grand jury's function is fundamentally compromised. And that's what happened in this case. The prosecutor misled the grand jury about the law of home repair fraud on two separate occasions. The first occurred when the foreperson asked, what makes this a felony case versus a civil case for a civil court? And that question in and of itself demonstrates that the grand jury had doubts about indicting Mr. Reimer. They were asking, what makes this a felony case when it looks like a breach of contract? And in response to that question, the presenting prosecutor relied upon a portion of the home repair fraud statute that had been severed as unconstitutional 10 years earlier. Now, the state seeks to excuse that deception on the basis that it might have been accidental. And the argument goes that the home repair fraud statute still contains the offending subsection. So the prosecutor, upon opening the statute book and scanning the statute, and without doing any additional research, that's the state's own language. She might have reasonably concluded that subsection C was still valid. Now, I will get in a moment to the perverse incentives that that standard would incent or encourage amongst prosecutors to do no additional research when they stand before a grand jury. But first, it's important to note that the second instance of deception in this case was much more clear, much more blatant, and there's no explanation for how that might have been accidental. That happened when the prosecutor was asked point-blank about Mr. Reimer's intent to finish the contract when he took the job. And in response to that question, the prosecutor said that's not an element of defense, which, of course, is absolutely false. The Illinois Supreme Court has said that's the ultimate issue, which is the defendant's intent at the time of contract formation. But the IPI doesn't say that, does it? The IPI for home repair fraud does not say exactly that. The IPI is, as my third argument gets to, is a little ambiguous, I'd say, about whether the intent not to finish needs to be present at the time of contract formation. And that's an independent basis for this Court to reverse and remand for a new trial. Well, you point out in your reply brief that the state conceded in their brief, page 21 I think it is, that they agree with you that they can only convict these guys if they are able to show that right at the beginning they did it. At the inception, they say that. So that's page 21. That's exactly right. It does not criminalize the act of not finishing the required work. I think it does. I agree with it. I don't know how it does not, but the state, they disagree. They think it's okay to start work, flee, do no work after taking whatever amounts of money you can steal from people, and then run away. That's not a criminal act. But Watts says what you say it says. Yes. You look at the beginning. Watts states that there needs to be an intersection between the intent not to perform and the time of contract formation. And absent proof of that intersection, the state fails to prove the defendant innocent or guilty beyond a reasonable doubt of home repair fraud. But before the grand jury, and that didn't occur at trial, I would note, that the state did not advance sufficient evidence to convict Mr. Reimer of home repair fraud because the proof failed to evince that he intended to defraud at the time of contract formation. But what we do know from the record is that the grand jury was affirmatively misled into believing that that was not an element of the offense at all, that you could disregard the element of intent under this statute. And that's absolutely false. It doesn't say intent, right? What they said from the grand jury was that it's not an element that you have to only look at. The determined intent is determined not only at the time of the formation of the contract, but any time during the contract, right? Because that was really what was testified to. The leading question is, well, does the act require that you focus only on the time of formation? No, it does not. And they think it does, but I don't. Well, I'm not certain. I think that the state actually agrees, based on what they state in their brief, that the Home Repair Fraud Act requires proof that the defendant intended not to perform when he entered the contract. I don't think that they've ever disputed that notion. I think the prosecutor before the grand jury was seeking to convince the grand jury that that evidence was not necessary in order to indict him. And that was where the most blatant instance of deception occurred in this case. Now, it's based on the holding at Watts and not based on the statute, right? The statute doesn't say focus only on it. In fact, the statute, now again in the severed portion of it, talks about looking at things later. So going back to the issue, what is the effect of Watts, or what is the effect of a court, a reviewing court, in validating a rebuttal presumption in a statute? Does that also then negate any of the other elements, not elements, but other factors raised to present that rebuttable presumption? So in this case, when the Supreme Court in Watts said, no, rebuttable presumptions are per se unconstitutional in Illinois. The legislator keeps passing them because they're goofy. They want to get reelected. Does that mean that the factors listed in C cannot be considered by triers of fact or by grand jurors? So the fact, in this case, the defendant disconnected his phone. The fact he gave an absolute false address to the people. The fact he never bought the cabinets, even though he said he would. The fact that he then took his tools and fled, which are essentially factors that are mentioned in the statute under C. If those exist, makes a rebuttal presumption. The Supreme Court in Watts takes away the rebuttal presumption. Don't those four facts give rise to proper inferences that Mr. Reimer is guilty of home repair fraud? Yes, Your Honor. I believe that those factors might be probative of an intent not to perform under the contract at the time of contract formation. For as the State says itself, there's rarely direct proof of intent. But when you imbue those factors with a legislative blessing by saying, the statute actually lists these factors that you can find an intent not to perform, and that portion of the statute has been invalidated a decade earlier. Invalidated or severed? Severed. Severed doesn't make it invalid, right? I mean, maybe it does. You know, again, in briefs we're very good on, I don't mean to not use briefs, but is that what it says? So doesn't it sever? Meaning, and to me, it would seem to me, it would only sever the rebuttal presumption part of it. Although, again, there's no question C is entirely severed. That doesn't make it doesn't exist anymore. There's nothing going to ether, to limbo. My understanding is that when a statute is invalidated under unconstitutional grounds, that that portion of it is void ab initio. That means it doesn't exist from the beginning. And the statute should be read as if that portion doesn't exist. And so the grand jury was led to believe that that portion of the statute is still And that's where the first instance of deception arose. But the second instance of deception is much more clear. And that's where the grand jury was told, you don't have to worry about the defendant's intent at the time of contract formation. That was false. That was misleading. And the State has not advanced any argument for how it might have been accidental. After all, this is a prosecutor we're talking about, someone who practices the criminal law on a daily basis and who's standing before a grand jury with a duty to inform them of the law of home repair fraud. And one of the most basic lessons of criminal law is that a felony requires proof of a culpable mental state. So this prosecutor or any prosecutor would have to know you can't dispense of the intent element when instructing the grand jury about a felony offense. And prosecutors, a favorite argument amongst prosecutors that I run into in my practice is that defendants are presumed to know the law. Well, if a defendant is presumed to know the law, then certainly a presenting prosecutor ought to be presumed to know the law under which she is attempting to obtain an indictment before the grand jury. So when you take a step back from this case and you consider that the State wants this Court to excuse the deception in this case based on the basis that it might have been accidental, that is a very untenable position. Because what happens to the prosecutor's duty before the grand jury in that case? It ceases to be a duty. It becomes something we would really like prosecutors to do. But if they fail to do so, if they mislead the grand jury affirmatively, then they don't face any consequences. Is there any waiver of forfeiture here? There is no waiver of forfeiture in this case. The State has erected a straw man waiver argument contending that an effort by defense counsel to be civil and to not cast aspersions against the presenting prosecutor in this case by saying these errors might have been inadvertent. That does not constitute the affirmative waiver that the State would have this case, this Court believe it is. An affirmative waiver is where you purposely take an issue out of a case by, for instance, stipulation. This is not a stipulation. In fact, this issue was perfectly preserved throughout the trial. What evidence was – I'm sorry. Just the issue of prejudice. The prejudice in this case is clear by virtue of the fact that the grand jury was asking pointed questions about the intent at the time of the contract formation. The grand jury was asking what makes this a felony? Why are you asking us to indict this guy on what looks like a breach of contract? And later, more pointedly, did Mr. Reimer intend not to finish when he took the job? And the grand jury was affirmatively misled. And I would point this Court to the case of People v. Hunter, where very similarly, the grand juror – a grand juror asked the State's witness a very pointed question about whether the rope slipped in an involuntary manslaughter case. Whether he threw the couch out of the window or whether the rope slipped when he was trying to lower it out. And the witness responded with a patently false answer. And the Hunter court stated, and I would like to quote, that in light of the grand juror's question, there is a distinct possibility that no indictment would have been returned had the State's witness responded truthfully. Those words apply with equal force in this case. If the prosecutor had answered the foreperson's questions correctly and truthfully, it is more than likely that Mr. Reimer would not have been indicted in this case. After all, the evidence demonstrates that he breached the contract, that he didn't commit home repair fraud. And so if I could, I'd like to turn to the sufficiency of the evidence very quickly. The bulk of the evidence produced at trial from the State's own witnesses was that Mr. Reimer and Ms. Avila entered a contract in early June of 2007 that Mr. Reimer undertook work and continued to work, perhaps shoddily, but continued to do work for five weeks under that contract. And then only in late July did the breach come about and he ceased doing work. Did he buy the $2,000 worth of, when he took the $2,000 from the victims, did he go buy KDA cabinets or did he not buy KDA cabinets? The evidence at trial was that he did not buy those cabinets. But it's critical to note that that evidence came through as incompetent hearsay evidence through Ms. Avila, who had already misled two police officers to believe that Mr. Reimer took all her money and did no work. That's how this whole prosecution, the wheels started turning on this prosecution. He was there, he took $6,500 and didn't buy the cabinets. He was there to repair a kitchen, replacing cabinets, and never bothered to buy the cabinets. He didn't. So the evidence through Ms. Avila, the hearsay evidence is that he didn't buy the cabinets. But Mr. Reimer did buy the countertops to be installed in her kitchen. And if his intent at the time of contract formation was to never honor the contract, to not perform and not complete it, why would he have bought the countertops in her kitchen? So he wouldn't be arrested right away? Since you're asking questions, how about that? The basic question when evaluating the sufficiency of the evidence in this case is to look at the timeline. Again, the intersection of whether Mr. Reimer intended to perform or did not intend to perform when he entered the contract. And people versus sports is very instructive on this topic. In that case, the defendant entered two contracts for window installation in early November. At some point between October and December of that year, he was cut off from his window suppliers. And the question was, did he know that he couldn't honor those contracts when he entered them? And the court reversed his conviction for home repair fraud on the basis that the evidence was sketchy about whether he knew he had been cut off from his suppliers when he entered those contracts. The evidence was sketchy in that case. The evidence in this case is clear. It's abundantly clear that Mr. Reimer intended to perform when he entered the contract, that he ran out of money, that he breached the contract. There's no dispute about that. He gave him $6,500. And he did a substantial amount of work. He installed the subflooring. He hung the drywall. He did the demolition. Anything else?  Yes, sir. Thank you. Thank you, sir. State. Good morning, and may it please the Court. My name is Sebastian Soto. I'm an Assistant State's Attorney here on behalf of the people of the State of Illinois, asking this Court to affirm the defendant's conviction and sentence for home repair fraud. The defendant presents two issues for the Court's review this morning. First, turning to the first issue, the defendant asserts that the presenting prosecutor committed prosecutorial misconduct in her presentation to the grand jury. Before the grand jurors answer a series of questions, there was an initial presentation by the State's Attorney. And the people presented the testimony of the Detective Bryant, and that detective testified that she'd been assigned to investigate this case, that the victim was Rita Avila, that the parties entered into an agreement, a contract, for the defendant to do home repair work, that the defendant was written checks totaling $6,000, that when the contract was entered into, the victim thought she knew the defendant's address, what his address was, and what his telephone number was. And through the first month of the contract, through the first month of the However, after a month of some work being done, his phone ended up being disconnected. And he never notified her, either by phone or in writing, of a new address. And when she went out to the address that she had for him, that was a vacant lot. The detective also testified the defendant was supposed to install the cabinets, but never even ordered them. And the detective, before the initial presentation ended, the detective stated that the defendant admitted that he started the work, but that he did not finish, that the defendant decided at some point he was not going to finish, and that the defendant also admitted that he'd been paid a large sum of money. And after that, there's a series of questions and answers, and two sets of those questions and answers is what the defendant challenges today. Can I ask you, in the grand jury proceeding, are you saying there was no misrepresentation by the State's Attorney? There was a misrepresentation in the first set of questions. The State's Attorney said that the statute shows inferences. The statute, as counsel pointed out, the statute, subsection C, was severed and held unconstitutional on Watts. So the statute does not provide those presumptions. Also, there's no inferences, so that was a misrepresentation. That first set. Right. So there was a misrepresentation. Are you saying the misrepresentation wasn't intentional? Correct. How do you get to that point? So this issue was litigated in the trial court, and the defendant conceded there that it wasn't intentional. In this case, we don't know that it was intentional. We know that it wasn't intentional because had the State's Attorney acted intentionally, the moment the grand jury transcripts were turned over, that deception would have been found out. There's no showing that the State's Attorney went into the grand jury with a goal of misleading the grand jurors. But this person was indicted on a clear misrepresentation of what the law was, correct? As to whether the statute had examples of inferences, correct. Yeah. Correct. The first part, the first question, in that same exchange, in that first exchange, they correctly stated the law by asking the detective, is it true according to the home repair fraud statute that once two parties come to an agreement for home repair, that if it is shown that a defendant has no intention to complete the work agreed upon, that is a felony. And that precedes the, that's the first part of that first exchange. And that's a true answer. That's a correct answer. But as you point out, the statute doesn't, doesn't, doesn't have, it doesn't have the inference. Well, the grand jury foreman specifically asked, does the, when do you look at the intent? And the State's Attorney said the statute doesn't say you look at the intent only at the beginning. He goes, you know what, the statute doesn't say that. However, Watts does say that. And you can see it at page 21 of the brief. As the defendant points out, the statute criminalizes the act of entering into a home repair contract with the intent not to perform. It does not criminalize the act of not finishing the required work. So you can see it, you only look at the beginning, right? Correct. And the State's Attorney specifically said that's not true. The statute criminalizes two, actually two acts, either intending, entering in the contract intending or knowing that performance would not be completed. In this case, the indictment was returned for both of those, both of those parts of A1. So under your theory of reading the statute, I read it differently? Mr. Reamer, anybody else could go and say I'd like to, I'm going to fix your cabinets, I need $5,000. Give him $5,000. He says, oh, you know what, gosh, I'll repair all your windows and I'll give you dormers and what I need is $50,000 up front. Here's your $50,000. Please, that's not a crime at all. Because when he entered in the contract, he had no intention of stealing the money. The statute criminalizes knowing that it wouldn't be, promising performance that you know would not be performed. So in your example, if the defendant knows that the work's not going to get done, then that's a. . . Not when he entered in the contract. You're saying it's an element that you can only focus on the intent is determined at the time the contract is signed. Correct. If he runs off during the middle of the work, then that's not a crime, correct. Okay. I can't imagine that being true, but you say that? Watts said that? And you can see that the state's attorney said that. The state's attorney agrees in my theory at the grand jury, which disagrees with Watts, right, that by the way, you don't need to look just at the intent at the time of the contract. The state doesn't. . . I think the question that was asked, it was a compound question. There's a couple questions inside that, inside the exchange. We're talking about the second question, whether the defendant admitted he intended not to complete the work. And the answer was, and the second part of that question was, did he intend not to finish the project? And that's on page 46 of the common law record. I don't know what page it's cited in our brief. And the answer is, it's correct that that's not an elementary offense. Well, there's a question that's found at 20 of the blue brief, the foreman. The question is, did he, Reimer, intend not to finish this project on the onset of accepting the job? State's attorney. Detective, is it correct that that is not an element of the offense? That is correct. Whether he intended. . . And the next page is showing when you say, by the way, it is. That's when you look at it. Correct. Okay, so that would also be wrong. In addition to citing C, which had been severed, the state attorney also said it's not an element of. . . You have to show it occurred at the onset. Our position is that the confusing compound question there, the answer that the state attorney gave was that it's not an element of offense that the defendant admits of the crime. And it's clearly not an element of. . . Before he was found guilty. . . Correct. He presented to the trial court a motion to dismiss the indictment. Correct. And that was denied. Correct. And in. . . Was that proper? The people believe so. Why? The trial court's ruling was. . . I mean, the state did have the obligation, didn't it, to show evidence satisfying the element of intent at the time the contract was entered into? Correct. But they failed to do so. Based upon the language that Justice Quinn just quoted. They failed to do that, didn't they? The. . . Pardon me. The grand jurors were told through the first part of the answer in the first question that it's a felony if two parties come to an agreement for home repair. You're splitting hairs. It seems that the quoted language that Justice Quinn just recited is very clear. The state told this panel that they did not have to present evidence. And that was absolutely wrong. The trial court presented with a motion before a finding of guilty certainly must have had an obligation to do something to remedy what had taken place before the grand jury. The trial court's ruling was that even if you argue a misstatement of the law, there was no deception sufficient to undermine the determination of probable cause. And that ruling finds there's some support for that in that even if there's a showing that there was an intentional misrepresentation that it would have to affect whether or not the grand jury would return an indictment. Well, does intentional or unintentional have anything to do with it? D'Vincenzo sets the rule at. . . Whether the state's attorney really intended to deceive or not, unintentional. What does that matter? They were clearly wrong before the panel. Why does it matter if it's intentional or unintentional? To determine whether or not the defense. . . From the standpoint of the defendant, it makes no difference. Correct. He's there for justice. Correct. He's. . . Thank you. In this case, though, it's the people maintain that the defendant cannot show. . . Cannot meet the three-part test set in D'Vincenzo. And there's been two cases since D'Vincenzo. . . People v. Oliver and people v. Hart. And Oliver has. . . Oliver says that intent is not required. But in Oliver, there were two separate indictments. And in between the indictments, the state's attorney presented the case to the grand jury. Also presented the case at a motion to quash. And in the grand jury, the police officer testified that as an eyewitness. . . He created the belief that he saw the defendant exchange cocaine with another man. And that wasn't correct. And although the court in Oliver said that intent isn't required, that court, the second district, thought there was a strong showing of intentionality. But because the officer's testimony was deceptive, because of the hearsay nature, was concealed, the defendant was denied due process. The third part of the test is whether or not the indictment still would have been returned. In this case, because there was still . . . Because the grand jury's job, duty, is to determine whether or not probable cause exists. And that's a reasonable belief whether or not a crime has occurred, whether the defendant's the person who committed that, that people believe that there was enough evidence. The defendant and the victim entered into a written contract. The victim paid the defendant $6,000. The defendant was supposed to order cabinets and install them, but he never, in fact, ordered them. But that's not just the grand jury. Did you have anything else? As to the second issue, the defendant . . . I wouldn't address reasonable doubt. The people have nothing further. And for the reasons stated here and contained in our brief, we ask this Court to affirm. Thank you. Briefly, Mr. Payne. Very briefly, Your Honor. As the State just said, the grand jury's task is to determine whether there's reasonable belief to believe a crime has occurred. And in this case, the record indicates the grand jury was not convinced when they asked their questions that it had a reasonable belief that a crime had occurred because the grand jury asked directly, did Mr. Reimer intend not to perform the contract when he entered into it? And that is what elevates a breach of contract to home repair fraud. Secondly, as to Justice Harris's question, why should intent be required under this due process claim? Well, under the law of Illinois, as counsel pointed out, under People v. Oliver pointed out, the Illinois Supreme Court in Evenshenza, the last time they talked about this due process claim, they relied upon U.S. v. Hogan, a Second Circuit case that said due process is violated if the grand jury is deceived and is prejudiced as the defendant, whether or not that deception was intentional. And so this qualified as a due process claim, clear and simple. That's why this Court should vacate Mr. Reimer's conviction for home repair fraud. Thank you. Thank you. This case will be taken under advisement.